IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DANIEL S.[1], ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 7:20cv00256 |
| ) | |
| KILOLO KIJAKAZI[2], ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff Daniel S. ("Daniel") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for Supplemental Security Income ("SSI") under the Social Security Act ("Act").[3] 42 U.S.C. § 1381-1383f. Daniel alleges that the Administrative Law Judge ("ALJ") erred by failing to properly assess his mental impairments and corresponding RFC. I conclude that substantial evidence supports the Commissioner's decision in all respects.  Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 19), and **DENYING** Daniel's Motion for Summary Judgment (Dkt. 16).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

[3] Daniel originally challenged the Commissioner's finding that he was ineligible for Disability Insurance Benefits ("DIB") as well, but later withdrew his request for a hearing related to DIB. R. 16–17; 42 U.S.C. §§ 401–433.

support the Commissioner's conclusion that Daniel failed to demonstrate that he was disabled under the Act.[4] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." Biestek, 139 S. Ct. 1148. The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Daniel filed for SSI and DIB benefits in May 2017 and claims that his disability began in

---

[4] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

May 2017[5], due to injuries from a work accident and colon cancer.[6] R. 207, 294, 303.[7] The state agency denied Daniel's claims at the initial and reconsideration levels of administrative review. R. 73–82, 83–93, 96–108, 109–17. ALJ Geraldine H. Page held a hearing on February 28, 2019 to consider only Daniel's claim for SSI because Daniel voluntarily withdrew his request for a hearing on his DIB claim. R. 16–17, 40–41. Vocational expert John Newman testified and Daniel was represented by counsel. On May 2, 2019, the ALJ entered her decision considering Daniel's claim under the familiar five-step process[8] and denying his claim for benefits. R. 16–30.

The ALJ found that Daniel suffered from the severe impairments of obesity, osteoarthritis of the knees, degenerative disc disease of the hips, peripheral neuropathy of the bilateral lower extremities, malignant neoplasm of the colon, status post right partial colectomy, diabetes mellitus, post-traumatic stress disorder ("PTSD"), and anxiety disorder. R. 19. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 19–20. Specifically, the ALJ considered listing 1.02

---

[5] Daniel originally alleged an onset date in January 2009, but later amended it to May 2017. R. 16. As a result of amending his alleged onset date to May 2017, Daniel was no longer eligible for DIB, and thus voluntarily withdrew his request for a hearing on his DIB claim. R. 16–17.

[6] Daniel was 45 years old on the date of the ALJ opinion, making him a younger person under the Act. R. 73.

[7] Daniel's date last insured was December 31, 2013; thus, he would have needed to show that his disability began on or before this date and existed for twelve continuous months to receive disability insurance benefits. R. 15, 17; U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[8] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

(major dysfunction of a joint), listing 1.04 (disorders of the spine), listing 11.14 (peripheral neuropathy), listing 3.18 (cancer of the large intestine), and listing 12.00G (mental disorders). R. 19–20, 22. The ALJ also considered Daniel's obesity in relation to the other listings. R. 20. The ALJ found that, regarding his mental impairments, Daniel had mild limitations in understanding, remembering, or applying information, and adapting or managing oneself, and moderate limitations in interacting with others, and concentrating, persisting, or maintaining pace. R. 21–22.

      The ALJ concluded that Daniel retained the residual functional capacity ("RFC") to perform a limited range of sedentary work. R. 22. Specifically, Daniel can lift and carry 20 pounds occasionally and 10 pounds frequently, and can stand and walk for two hours and sit for six hours in an eight-hour workday. Id. He can occasionally push and pull with the lower extremities, but cannot perform foot controls. R. 22–23. Daniel can occasionally balance, kneel, crouch, crawl, stoop, and climb ramps and stairs, but should avoid concentrated exposure to extreme temperatures and all exposure to hazardous machinery, unprotected heights, vibrating surfaces, and climbing ladders, ropes, and scaffolds. He can sit or stand for one hour to one and a half hours at one time without interruption, with brief changes at the workstation, without interruption in the work flow. Further, Daniel can attend, persist, and concentrate for two-hour segments with normal breaks provided by the employer, and can complete a normal workday and workweek in work that involves no interaction with the general public and occasional interaction with coworkers and supervisors. Finally, he can respond appropriately to supervisors and carry out simple instruction in repetitive, unskilled work. R. 23. The ALJ determined that Daniel was unable to perform his past relevant work as a construction worker, but that he could perform jobs that exist in significant numbers in the national economy, such as assembler, packer/stuffer, and

inspector/tester/gauger. R. 28–29. Thus, the ALJ concluded that Daniel was not disabled. R. 29. Daniel appealed and the Appeals Council denied his request for review on March 18, 2020. R. 1–4.

## ANALYSIS

Daniel alleges that the ALJ failed to properly account for limitations related to his mental health conditions in assessing the RFC.

### A. Medical History Overview

Daniel indicates his mental health issues stem from trauma associated with a work accident in 2004, where a ditch collapsed and buried him in dirt.[9] Pl.s' Br. at 1, Dkt. 16; R. 856, 860. While Daniel sought regular treatment from his primary care doctor related to physical complaints during the relevant period, he generally did not complain of mental symptoms during these appointments. R. 637–39, 642–48, 695, 834–38.[10] Daniel first sought mental health treatment during the relevant period in February 2019, when he went to Blue Ridge Behavioral Health for an initial assessment.[11] R. 853–74. At this appointment, Daniel indicated he had no previous inpatient mental health treatment, and "his only outpatient episode of medications was . . . in 2005." R. 856. During the assessment, he described the 2004 work accident, appeared anxious, and reported difficulty dealing with the public and public spaces. R. 856. The therapist

---

[9] Daniel also has a history of physical impairments and treatment; however, I address only his mental health here as he does not allege any error regarding the ALJ's consideration of his physical impairments.

[10] However, an October 2017 neurology consultation does list him as positive for anxiety and depression. R. 702.

[11] At the initial appointment, Daniel reported he was referred for the assessment by the law office involved in his disability application. R. 855.

5

indicated a provisional diagnosis of PTSD, potentially an anxiety disorder, and recommended additional counseling.[12] R. 856, 870.

In August 2017, William Humphries, M.D., completed a consultative evaluation, which focused primarily on Daniels' physical limitations, but also noted a normal mental status exam. R. 676–79. In September and December 2017, respectively, state agency psychologists Nicole Sampson, Ph.D. and Howard S. Leizer, Ph.D., reviewed the record and both found no medically determinable mental impairments. R. 88, 102. Dr. Liezer indicated that while Daniel has a history of psychiatric diagnoses, none were currently active, and he had no significant treatment. R. 102.

### B. Mental Impairments and RFC Assessment

Daniel argues that the ALJ improperly discounted the limitations from his "severe mental conditions" in creating the RFC, stating he "clearly suffers from anxiety, depression, and PTSD." Pl.'s Br. at 4, Dkt. 16. The Commissioner counters that substantial evidence supports the ALJ's decision, and emphasizes that the diagnosis of a medical condition is not enough to prove disability.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports her conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012

---

[12] Though Daniel indicated he was willing to give counseling a try, his intake appointment was only approximately one week before the hearing with the ALJ, and there are no additional appointments in the record before me.

WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

Daniel specifically objects to the ALJ's RFC findings that he could attend, persist, and concentrate for two-hour segments, interact occasionally with supervisor and coworkers, and respond appropriately to supervisors and carry out simple instructions. As evidence that the RFC did not accommodate his mental limitations, Daniel points to the mental status exam from his single appointment at Blue Ridge Behavior Healthcare, which included an anxious mood, blunted affect, and shakes/twitches. However, the ALJ did not ignore Daniel's mental health issues; indeed, she found he had severe impairments of PTSD and anxiety disorder. R. 19. The ALJ acknowledged Daniel's allegations of significant mental symptoms, including poor memory, concentration, social functioning, and anxiety, as well as Daniel's hearing testimony regarding his limitations, including that he "gets really anxious and shakes his arms," is nervous around people, and "thinks about the [2004] accident every day." R. 24, 27. The ALJ also discussed Daniel's mental health treatment in detail, namely his single appointment at Blue Ridge Behavioral Healthcare in February 2019. R. 25, 27.

Here, the ALJ considered the record as a whole and adequately explained how she determined the RFC. The ALJ emphasized that the treatment notes of his treating doctors generally showed normal mental status examinations, and that even at his February 2019 appointment, he had normal concentration, memory, insight, and judgment. R. 27. The ALJ

7

acknowledged that, even though most of his treating practitioners did not observe anxiety, he "did appear anxious" during his February 2019 initial evaluation at Blue Ridge Behavioral Health. R. 21. The ALJ specifically explained how she accommodated Daniel's severe impairments of anxiety and PTSD. She limited Daniel to simple, unskilled work due to his anxiety and PTSD symptoms, which could make concentration on more complex work difficult. R. 28. Further, the ALJ limited Daniel to jobs with breaks every two hours, limited interaction with coworkers and supervisors, and no public interaction, all for his anxiety. Id. The ALJ imposed these limitations, despite noting that Daniel generally interacted normally with his treating practitioners, who "often noted he was pleasant, cooperative, and in no distress," could be around the public for short periods of less than 30 minutes while shopping, and reported socializing with family. R. 21.

Similarly, as support that Daniel could "attend, persist, and concentrate" for two hours at a time during the workday, the ALJ noted that he did not complain of serious difficulty with concentration, persistence, or pace to his treating practitioners, who likewise did not observe Daniel to be "overly distractible or slow," and that he reported doing small projects around the house, including mowing the lawn with a riding mower, and shopping, as well as "playing and focusing on his video games."[13] R. 21. This explanation conforms with the instruction in Shinaberry v. Saul, that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). However, there is no "categorical rule that requires an ALJ to

---

[13] Daniel testified at the hearing that he occupied his time during the day by sleeping and sometimes playing videogames, stating he "can focus on the videogames and shut out the world" including his anxiety. R. 50.

8

always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Id. In contrast, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Shinaberry further confirms that Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, but instead underscores the ALJ's duty to adequately review the evidence and explain the decision. See also Monroe, 826 F.3d 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

Indeed, this is not a situation like Mascio, where the ALJ summarily concluded that a limitation to simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence and pace without further analysis. Here, the ALJ acknowledged that Daniel's anxiety and PTSD symptoms might interfere with his ability to concentrate on complex work, and confined him to jobs with employer-provided breaks every two hours as an accommodation, along with accommodations limiting his exposure to other people, including coworkers, supervisors, and the public. Further, unlike the claimant in Mascio, the medical evidence supports the ALJ's conclusion that, despite his moderate limitations in concentration, persistence, or pace, Daniel is capable of performing the work as outlined by the RFC.

At bottom, the ALJ adequately explained how the evidence supports her conclusions regarding the RFC, including a detailed discussion of Daniel's medical history, the medical

opinions, and his own allegations. I find that substantial evidence supports the ALJ's conclusions regarding Daniel's RFC.

## CONCLUSION

It is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: August 4, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge